UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 15bk42427 |
| Lake Michigan Beach Pottawattamie Resort LLC, | ) | |
| | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |
| | ) | |

TIMOTHY A. BARNES, Judge

MEMORANDUM DECISION

The matter before the court arises out of the Motion To Dismiss Case [Dkt. No. 11] (the "Motion"), filed by BCL-Bridge Funding LLC ("BCL"), seeking dismissal for cause under section 1112(b) of the Bankruptcy Code (as defined below) of the chapter 11 case of Lake Michigan Beach Pottawattamie Resort LLC (the "Debtor"). BCL alleges that because the Debtor filed its bankruptcy petition on the eve of foreclosure and without BCL's approval as a member of the Debtor, the case was filed in bad faith and must be dismissed.

The matter was argued before the court on January 27, 2016 (the "Hearing") and the court delivered its ruling orally on March 2, 2016. For the reasons set forth herein, the court holds that BCL failed to show that the Debtor filed this case in bad faith. Further, the Debtor was not prohibited from filing the case under its existing corporate control documents.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the United States Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1). A proceeding for dismissal of a bankruptcy case under section 1112(b) may only arise in a case under title 11 and is a matter in which a bankruptcy judge has constitutional authority to enter a final order. 28 U.S.C. § 157(b)(2)(A); *In re NNN 123 N. Wacker, LLC*, 510 B.R. 854, 857 (Bankr. N.D. Ill. 2014) (Schmetterer, J.).

Accordingly, final judgment is within the scope of the court's authority.

## PROCEDURAL HISTORY

In considering the relief sought by BCL, the court has considered the evidence and argument presented by the parties at the Hearing, has reviewed the Motion, the attached exhibits submitted in conjunction therewith, and has reviewed and found each of the following of particular relevance:

(1) Voluntary Petition for Non-Individuals Filing for Bankruptcy [Dkt. No. 1];

(2) Debtor's Response to BCL-Bridge Funding LLC's Motion to Dismiss [Dkt. No. 25];

(3) Amended Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders [Dkt. No. 29];

(4) Amended Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy [Dkt. No. 31];

(5) Amended Statement of Financial Affairs for Non-Individuals [Dkt. No. 32];

(6) Amended Schedules A/B, D, E/F, G, H [Dkt. No. 34]; and

(7) BCL-Bridge Funding LLC's Reply in Support of Motion to Dismiss Case [Dkt. No. 37].

Though the foregoing items do not constitute an exhaustive list of the filings in the case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 1989) (Goldgar, J.) (recognizing same).

## BACKGROUND

This case is essentially a fight over the main asset of the Debtor, a vacation resort in Coloma, Michigan that hosts multiple condominium units and a cabin that are seasonally rented, and undeveloped land, all on 15.5 acres (the "Property"). With respect to the Property, the Debtor granted a mortgage and assignment of rents to BCL on December 18, 2014 to secure a $1,336,000.00 loan and $500,000.00 line of credit given by BCL to the Debtor.[1] BCL recorded the mortgage on January 22, 2015.

The Debtor defaulted on its monetary obligations to BCL in July 2015. In exchange for a promise from BCL that it would forbear from pursuing remedies for the default until October 21, 2015, the Debtor signed an agreement (the "Forbearance Agreement") on August 21, 2015 wherein the Debtor stipulated to a monetary default in the amount of $2,641,147.89 and promised to pay that amount in full by October 21, 2015. The Debtor also made further promises to BCL, one of

---

[1] Property in Streamwood, Lemont, Bartlett and Roselle, Illinois held in title by other parties also secured the loan and line of credit (the "Third Party Property"). The value of the Third Party Property has not been addressed by the parties.

which was to execute a third amendment to its operating agreement (the "Third Amendment")[2] establishing BCL as the fifth member of the Debtor, the "Special Member," with the right to approve or disapprove any "Material Action" by the Debtor. Third Amendment, Articles 12.2(vii), 12.3(i), p.2. Material Action is defined by the Third Amendment to mean any action:

> (A) to consolidate or merge the Company with or into any person, (B) to sell all or substantially all of the assets of the Company, (C) to institute any litigation or other legal proceedings whatsoever, (D) *to institute proceedings to have the Company be adjudicated bankrupt or insolvent, or consent to the institution of bankruptcy or insolvency proceedings against the Company or file a petition seeking, or consent to, reorganization or relief with respect tot the Company under any applicable federal or state law relating to bankruptcy*, or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of the Company or a substantial part of its property, or make any assignment for the benefit of creditors of the Company, or admit in writing the Company's inability to pay its debts generally as they become due, or declare of effectuate a moratorium on the payment of any obligation, or take action in furtherance of any such action, or (E) to dissolve or liquidate the Company.

*Id.* at Article 12.2(vi), p.2 (emphasis added). BCL, in its capacity as the Special Member of the Debtor, has no interest in the profits or losses of the Debtor, no right to distributions or tax consequences and is not required to make capital contributions to the Debtor – essentially, BCL was kept separate and apart from the Debtor in all ways but for its authority to block the Debtor from petitioning for bankruptcy relief. *Id.* at Article 12.4(iii), p. 2. Further, when exercising its rights under the Third Amendment, BCL is not obligated to consider any interests or desires other than its own and has "no duty or obligation to give any consideration to any interest of or factors affecting the Company or the Members." *Id.* at Article 12.4(iv), pp. 2-3.

Shortly following the execution of the Third Amendment, the Debtor once again failed to fulfill its monetary obligations to BCL, by failing to meet the October 21, 2015 deadline under the Forbearance Agreement to pay BCL in full. Following this default, BCL filed a foreclosure complaint against the Third Party Property on November 2, 2015 and against the Property on November 3, 2015. With respect to the latter, BCL published notice of a December 17, 2015 non-judicial foreclosure sale for three weeks in the Berrien County Record, the local newspaper for where the Property is located.

On December 16, 2015 (the "Petition Date"), the Debtor petitioned for relief under chapter 11 of the Bankruptcy Code. As a result, the foreclosure sale was not held as scheduled. Attached to the Debtor's petition is a consent to file bankruptcy signed by four members of the Debtor. A signature on behalf of BCL, as the Special Member, was not included. The Debtor agrees that BCL has not consented to the Debtor's bankruptcy petition and that this case was filed on the eve of the foreclosure sale.

---

[2] The Third Amendment, as provided to the court as an attachment to the Debtor's response to the Motion, was executed by all of the original members of the Debtor, but was not dated and was not executed by anyone for BCL as the Special Member.

The Debtor has provided broker price opinions for each of the rental units and the undeveloped acreage that support a valuation of the Property, as of the Petition Date, exceeding the $6,000,000.00 value scheduled by the Debtor. BCL has not filed a claim, but given the amount set forth in the Forbearance Agreement less than six months prior to the Petition Date, there appears to be little doubt that there is equity in the Property, even if value of the Third Party Property were not considered. Unsurprisingly, therefore, BCL does not dispute the Debtor's allegation that there is equity in the Property or that any of the amounts due to it are unsecured by the value of the Property and the Third Party Property.

DISCUSSION

BCL argues that the Debtor's bankruptcy petition is a bad faith litigation tactic to stall the foreclosure process and, accordingly, grounds for dismissal exist. Such grounds are asserted on motions to dismiss on a regular basis in this court. Had that been the extent of BCL's argument, this matter could have been handled summarily, as will be seen below. The argument with respect to the validity of the Debtor's bankruptcy petition, however, requires more. The court will address all arguments in turn.

A. Dismissal of a Chapter 11 Case for Cause

A court may dismiss a chapter 11 case if cause is established and such cause merits dismissal rather than conversion. 11 U.S.C. § 1112(b). The party seeking dismissal bears the burden of proof by a preponderance of the evidence. *In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994). Cause, however, is not definitely established by the statute. Section 1112(b)(4) provides courts with a nonexclusive list of factors that may constitute cause for dismissal, 11 U.S.C. § 1112(b)(4), which list does not include bad faith.

1. *Bad Faith*

A chapter 11 case is infirm if not filed in good faith and, therefore, courts in this Circuit have found that the lack of good faith can constitute "cause" for dismissal of a case under section 1112(b). *In re Madison Hotel Associates*, 749 F.2d 410, 426 (7th Cir. 1984); *In re Tekena USA, LLC*, 419 B.R. 341, 346 (Bankr. N.D. Ill. 2009) (Cox, J.). As with intent, courts look at each bankruptcy filing on a case-by-case basis to determine whether factors indicative of a debtor's good or bad faith are present. *See Tekena USA, LLC*, 419 B.R. at 346; *In re S. Beach Sec., Inc.*, 341 B.R. 853, 857 (N.D. Ill. 2006) (*citing In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118 (3d Cir. 2004)) ("Each bankruptcy petition, however, arises under different circumstances and raises particular concerns, requiring a court to examine the debtor's unique situation to determine where 'a petition falls along the spectrum ranging from the clearly acceptable to the patently abusive.'").

*Tekena* and the factors enumerated therein have been cited by many creditors seeking dismissal, including BCL, as the checklist that a court should use to examine whether a debtor acted in good or bad faith in filing its bankruptcy petition. 419 B.R. 341. The so-called "*Tekena* factors"[3]

[3] Though commonly referred to as the "*Tekena* factors" in this jurisdiction, as noted in *Tekena*, these factors are actually set forth in an earlier opinion by Judge Lee of the District Court for the Northern District of Indiana. *In re Grieshop*, 63 B.R. 657, 663 (N.D. Ind. 1986).

are not binding on this court, however, and are, as with the factors set forth in section 1112(b), neither exhaustive nor mandatory. The court will, nonetheless, consider them in the totality of this case. The factors are:

1. The debtor has few or no unsecured creditors.

2. There has been a previous bankruptcy petition by the debtor or a related entity.

3. The pre-petition conduct of the debtor has been improper.

4. The petition effectively allows the debtor to evade court orders.

5. There are few debts to non-moving creditors.

6. The petition was filed on the eve of foreclosure.

7. The foreclosed property is the sole or major asset of the debtor.

8. The debtor has no on-going business or employees.

9. There is no possibility of reorganization.

10. The debtor's income is not sufficient to operate.

11. There was no pressure from non-moving creditors.

12. Reorganization essentially involves the resolution of a two-party dispute.

13. A corporate debtor was formed and received title to its major assets immediately before the petition.

14. The debtor filed solely to create the automatic stay.

*Tekena*, 419 B.R. at 346. The factors BCL relies on in making its bad faith argument in the Motion are factors 1, 2, 6, 7, 8, 9 and 12, though at the Hearing, counsel for BCC summarily argued that all *Tekena* factors were met and no clearer case for dismissal than this case could exist. The arguments made in the Motion are the grounds upon which BCL primarily relies and are, coincidentally, the only ones bearing any relation to this case. The court will, therefore, address only the factors enumerated in the Motion without considering the remaining *Tekena* factors.

a. Does the Debtor have few or no unsecured creditors? (*Tekena* factor #1)

BCL argues that the first *Tekena* factor is satisfied because it is the only "real" secured creditor of the Debtor. BCL puts so much stock in this assertion that it italicizes the term "real" when using it in the Motion.

This assertion is, however, flawed. There is no test as to whether a creditor is "real" or not in the relevant statutory or case law. Further, concentrating on only secured creditors can lead to mistaken results.

BCL has not filed a claim in this case. Instead, other than the exhibits attached to the Motion, BCL relies on the Debtor's schedules, listing BCL as a secured creditor, to establish its status. The exhibits, of course, are not evidence, while the Debtor's schedules, signed under penalty of perjury, may be. Thus, the only evidence the court has is the Debtor's schedules.

Concentrating on the schedules, however, leads to the unavoidable conclusion that BCL is not the only creditor. The Debtor also scheduled Pottawattamie Resort Condominium Association as having a secured claim and Erica Friedman as holding an unliquidated, unsecured claim, based on pending litigation. No objections to the scheduling of these claims has been raised, and in a chapter 11 case, scheduled claims are presumptively valid until adjudicated otherwise. 11 U.S.C. § 1111(a). The Debtor, therefore, has at least three creditors.

BCL's argument that it is the only "real" creditor in this case, therefore, fails under the Bankruptcy Code and under its own analysis. The first *Tekena* factor is not satisfied.

b. Has the Debtor or a related entity previously petitioned for bankruptcy relief? (*Tekena* factor # 2)

BCL's argument regarding the second *Tekena* factor – whether there was a previous bankruptcy petition by the Debtor or a related entity – strains its credibility. BCL argues that the Debtor's default somehow equates to a prior bankruptcy. That the Debtor was in default to BCL is not indicative of bad faith.[4] If such were the case, most debtors would have filed their cases in bad faith. The Debtor has not filed any previous bankruptcy petitions and the second factor is clearly not satisfied.

c. Did the Debtor file this case on the eve of foreclosure? (*Tekena* factor #6)

BCL repeatedly argues in the Motion and argued at the Hearing that the most compelling indication of bad faith is the timing of the Debtor's bankruptcy petition – on the eve of foreclosure. The Debtor does not dispute the timing but argues that the foreclosure would have resulted in a large windfall to BCL and that the petition for bankruptcy relief was filed to preserve equity in the Property.

This is, in the court's view, the most abused of the *Tekena* factors. Parties presume that if this factor is satisfied, bad faith must exist. This is simply not correct. "It is well settled, of course, that the filing of a bankruptcy petition on the eve of a foreclosure or eviction does not, by itself, establish a bad faith filing." *In re Eclair Bakery Ltd.*, 255 B.R. 121, 137 (Bankr. S.D.N.Y. 2000). Again, bad faith requires this court to review the totality of the circumstances regarding a petition for bankruptcy relied, not just an isolated factor. While BCL is correct that the sixth factor is satisfied, taken alone, this factor is unpersuasive.

d. Is the Property the sole or major asset of the Debtor? (*Tekena* factor #7)

---

[4] "Debtor's prepetition payment behavior is relevant only insofar as it would suggest that equally unimpressive postpetition payment behavior will ensue. However, it must be recalled that poor prepetition payment histories are systematic of most debtors and hence this factor is, in itself, of very limited relevance." *In re Tashjian,* 72 B.R. 968, 974 (Bankr. E.D. Pa. 1987).

BCL also is correct that the seventh factor is satisfied – the Property is the major asset of the Debtor. Again, this factor is not outcome determinative. Even assuming that this were the *only* asset of the Debtor, this alone would not suffice.

> [T]he fact that this is a single asset real estate case does not render it a bad faith filing. The Bankruptcy Code contains no provision to this effect, and, to the contrary, was recently amended to deal specifically with certain single asset real estate cases. *See* 11 U.S.C. §§ 101(51B) (defining 'single asset real estate') and 362(d)(3) (providing special grounds for relief from the automatic stay in single asset real estate cases), each added to the Code by Section 218 of the Bankruptcy Reform Act of 1994. *See also In re James Wilson Assocs.*, 965 F.2d 160 (7th Cir. 1992) (affirming confirmation of Chapter 11 plan in single asset real estate case).

*In re 203 N. LaSalle St. Ltd. P'ship*, 190 B.R. 567, 590 (Bankr. N.D. Ill. 1995) (Wedoff, J.), *aff'd Bank of Am., Illinois v. 203 N. LaSalle St. P'ship*, 195 B.R. 692 (N.D. Ill. 1996), *aff'd In re 203 N. LaSalle St. P'ship*, 126 F.3d 955 (7th Cir. 1997), *rev'd on other grounds, Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999). The court cannot conclude that a case is filed in bad faith simply because there is but one asset around which to reorganize.

e. Does the Debtor have on-going business? (*Tekena* factor #8)

The Debtor is not currently operating. Chapter 11 relief, however, is not reserved for only operating businesses. Debtors in chapter 11 cases may refinance debts or sell all or part of their assets in order to maximize value in an operational or nonoperational setting. *In re Chicago Const. Specialties, Inc.*, 510 B.R. 205, 215 (Bankr. N.D. Ill. 2014) (Barnes, J.) ("Despite being entitled 'Reorganization,' chapter 11 expressly contemplates liquidating plans of reorganization."); *see also, e.g.*, 11 U.S.C. § 1123 (A plan may "provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests.").

BCL does not dispute that there is equity in the Property. That equity may be used to reorganize the Debtor and/or pay its debts, and the Debtor has offered to provide evidence to BCO and the court of lenders willing to refinance the Property and pay BCL in full. BCL, however, believes there must be more, that the Debtor must actually be operating and generating cash flow. This argument mistakes both the essential nature of chapter 11 noted above and that, even if being nonoperational would equate to having no on-going business and thereby potentially end the inquiry (which it does not), being nonoperational on a seasonal basis would not.

Among other things, a debtor may, in good faith, use the bankruptcy system to give it a breathing spell to become cash-flow solvent when it is, as the Debtor is in this case, balance-sheet solvent.

> Early on in a bankruptcy case, a debtor may be given a greater benefit of the doubt as to the success of a proposed feasible plan. *In re Cadwell's Corners P'ship*, 174 B.R. 744, 759 (Bankr. N.D. Ill. 1994) (Katz, J.); *see also In re Morrow*, 495 B.R. 378, 386 (Bankr. N.D. Ill. 2013) (Barnes, J.) (explaining that the filing of a bankruptcy case gives debtor's a "breathing spell," which allows a debtor time to attempt a reorganization plan).

*In re Bovino*, 496 B.R. 492, 507 (Bankr. N.D. Ill. 2013) (Barnes, J.). While the Debtor's seasonal business may not be presently operating, that does not mean that there are no assets to operate an on-going business during the peak summer seasons. As a result, this factor is not satisfied.

f. Is there a possibility of reorganization without the consent of BCL, or is this, essentially, a two party dispute? (*Tekena* factors #9, 12)

BCL has also not proven the ninth and twelfth *Tekena* factors. This is not solely a two party dispute and, as previously demonstrated by the Debtor's schedules, BCL is not the only creditor in this case. Reorganization of the Debtor through confirmation of a chapter 11 plan, thus, may be possible without BCL's consent. *See, e.g.*, 11 U.S.C. § 1129(b). Further, given the undeniable equity in the Property, other forms of chapter 11 relief may be available to the Debtor. Any specific finding on the likelihood of reorganization – and thus, dismissal – under the facts of this case and at this early point in the chapter 11 process, is premature. *See Bovino*, 496 B.R. at 499 (*citing In re Sal Caruso Cheese, Inc.*, 107 B.R. 808, 817 (Bankr. N.D.N.Y. 1989)); *see also In re Gen. Growth Props., Inc.*, 409 B.R. 43, 65 (Bankr. S.D.N.Y. 2009) ("There is no requirement in the Bankruptcy Code that a debtor must prove that a plan is confirmable in order to file a petition.").

After considering the foregoing, and after reviewing the facts of *Tekena* in comparison to those in this matter, the court determines that BCL's reliance on *Tekena* is misplaced. Some factors were distorted by BCL so as to fit within the facts of this case. Some factors are simply inapplicable. Those that remain, even when taken together, are not enough to establish bad faith.

In fact, this case is very similar to the case of *In re Clinton Fields, Inc.*, 168 B.R. 265 (Bankr. M.D. Ga. 1994), which the court finds to be more helpful than *Tekena* for analyzing the faith of the Debtor in this case. In *Clinton Fields*, the Debtor's single asset was real property and the case was filed on the eve of foreclosure. Judge Walker did not dismiss the debtor's chapter 11 petition when faced with allegations of bad faith based on findings that "the presence of equity provides both a sound basis for reorganization and substantial evidence of the Debtor's good faith intent to reorganize." *Id.* at 269.

It is clear to the court, therefore, that BCL has failed to carry its burden that this case was commenced in bad faith and, absent the argument that the Debtor's bankruptcy petition is void, as discussed below, the court finds no cause to dismiss this case under section 1112(b).

2. *Unauthorized Filing*

As noted above, if the foregoing had been BCL's only allegations, the Motion would have been denied without the need for further inquiry. BCL has also argued, however, that the Debtor's bankruptcy petition was not authorized because one member of the Debtor, BCL, did not approve it. This argument was made in bold and italics in the Motion[5] but not initially addressed by BCL at

[5] As noted above, this is not the only creative use of emphasis in the Motion. While court filings share little in common with email and other forms of modern, textual communication, in each medium parties are encouraged to exercise decorum and not to overuse emphasis. Just as all capital letters are deemed to be shouting in the latter, so goes bold plus italics in the former. The parties are cautioned against the overuse of textual modification for emphasis.

the Hearing. Only in response to questioning by the court did BCL press the argument. The Debtor argues, in response, that the provision in the Third Amendment requiring BCL's consent for the filing of a bankruptcy petition by the Debtor, is void as against public policy because it amounts to a prohibition of the Debtor's right to exercise its right to bankruptcy relief and, alternatively, is not valid under Michigan law. The court will address each of the Debtor's arguments in light of the specific language of the Third Amendments only after examining the effect of the Third Amendment on the outcome under Michigan law.

a. Michigan corporate governance law for consent

Before examining whether the provision requiring BCL's consent contained in the Third Amendment is enforceable under bankruptcy or Michigan law, the court must determine whether such an inquiry is necessary. To put it plainly, if the operating agreement, as amended, does not prohibit the filing as effectuated, then the argument with respect to the validity of the provision is unfounded.

In that regard, BCL argues that the provision in the Third Amendment requiring its consent, as the Special Member of the Debtor, to any material action, including bankruptcy relief, means that the Debtor's petition in this case is invalid because it was filed without its consent. The Debtor did not address the legal analysis for consent under this provision and, instead, argues that the provision requiring BCL's consent in the Third Amendment is void, thus, the Debtor obtained the requisite consent under the operating agreement without the alleged invalid provision.

The Debtor is a limited liability company created in Michigan, therefore, the court must apply Michigan corporate governance law in determining whether the filing was a valid corporate action. *See In re Gen–Air Plumbing & Remodeling, Inc.*, 208 B.R. 426, 430 (Bankr. N.D. Ill. 1997) (Squires, J.) ("The authority to file a bankruptcy petition on behalf of a corporation must derive from state corporate governance law."). In Michigan, "[u]nless the vote of a greater percentage of the voting interest of members is required by this act, the articles of organization, or an operating agreement, a vote of the majority in interest of the members entitled to vote is required to approve any matter submitted for a vote of the members." Mich. Comp. Laws. Ann. § 450.4502(8). Thus, the operating agreement can require more than a majority vote.

The Debtor's original operating agreement provides that "[a]ll members shall be entitled to be vote on any matter submitted to a vote of the members," Operating Agreement for Lake Michigan Beach Pottawattamie Resort, LLC, Article 7.1, p. 7., and that the "affirmative core or consent of a majority of the Sharing Ratios of all the Members entitled to vote or consent on such matter shall be required." *Id.* at Article 7.2, p. 7. Sharing ratios are defined as the "interests of the respective Members in the total capital of the Company." *Id.* at Article 4.1, p. 3.

The first and second amendments to the operating agreement shift the sharing ratios between the three individual, original members of the Debtor (first amendment) and add the fourth individual member in exchange for a capital contribution (second amendment), but do not alter the voting requirements. The Third Amendment provides that BCL, as the Special Member, does not have any capital of the Debtor. Third Amendment, Article 12.4(iii), p.2. The four individual members constitute 100% of the sharing ratios, therefore, and consented to the Debtor's bankruptcy petition. But for the specific prohibitions in the Third Amendment, under Michigan law, the

Debtor's petition would be authorized as a majority of the sharing ratios consented to the petition in this case.

Those prohibitions, however, change the analysis, and that undoubtedly was their intent.

Article XII of the Third Amendment is entitled "Special Member" and provides:

> This Article XII has been adopted in order to comply with certain provisions of the Loan Documents (as defined herein). This Section is written *for the express benefit of the Lender* (as defined herein) and shall *supersede any conflicting or inconsistent provision of this Agreement.* This Section shall apply until such time as no Obligations remain outstanding (including, without limitation, until such time as the Debt shall be paid in full), after which it will no longer have any fore or effect.

Third Amendment, Article 12.1, p. 1 (emphasis added). "Section" is not defined in the Third Amendment, but in context clearly refers to Article XII. Article XII is the entirety of the Third Amendment, which was executed in conjunction with the Forbearance Agreement, and establishes BCL as the Special Member and the provision requiring BCL's consent for the Debtor to petition for bankruptcy. *Id.* at 12.2(viii), 12.3(i), p. 2. Because the Third Amendment supersedes the previous provision in the Debtor's operating agreement requiring a majority of the sharing ratios for consent, *see infra*, and because Michigan allows for operating agreements to override the default majority of interests requirement set forth in section 450.4502(8), the provision requiring BCL to consent would result in the Debtor's petition in this case, filed without the consent of BCL, being infirm.

The court must, therefore, determine the validity of the prohibitions in the Third Amendment in order to determine whether this petition was authorized under the Debtor's operating agreement and Michigan law and, ultimately, bankruptcy law.

b. Blocking director

BCL's argument is grounded in the well-established commercial practice of using "blocking directors." A blocking director[6] is the lynchpin that holds together a bankruptcy remote special purpose entity,[7] formed to ring fence assets from creditors other than a secured creditor who is

---

6 For the purpose of simplicity and because "blocking director" is more common in parlance than "blocking member," the term blocking director will be used *infra* except where used specifically in relation to the Debtor. However, the discussion and laws relating blocking directors apply equally to structures involving blocking members, as is discussed below.

7 Sometimes referred to as a "single-purpose entity" or "bankruptcy remote entity," an SPE has been described by one commentator as "an entity, formed concurrently with, or immediately prior to, the closing of a financing transaction, one purpose of which is to isolate the financial assets from the potential bankruptcy estate of the original entity, the borrower or originator." David B. Stratton, *Special–Purpose Entities and Authority to File Bankruptcy*, 23–2 Am. Bankr. Inst. J. 36 (March 2004). "Bankruptcy-remote structures are devices that reduce the risk that a borrower will file bankruptcy or, if bankruptcy is filed, ensure the creditor procedural advantages in the proceedings." Michael T. Madison, et. al., *The Law of Real Estate Financing*, § 13:38 (2008).

*Gen. Growth*, 409 B.R. at 49.

unwilling to lend otherwise and for whom the structure is made. In such instances, a business enterprise creates an entity that has assets but limited or no operations and may not, but for unanimous consent of its directors, file for bankruptcy, *Gen. Growth*, 409 B.R. at 49, and that entity acts as the borrower and often the guarantor of the loan. Actions of a similar nature to bankruptcy are likewise prohibited. The organizational documents of the entity provide that the prohibited actions may not be taken if a specific director's seat is vacant, and that director is nominated by the secured creditor. Last, the organizational documents of the entity provide that these prohibitions may not be altered but for unanimous consent of the directors (again, with an inability to act if the secured creditor's nominee's seat is vacant).

The import of such a structure is readily apparent. One specific director, chosen by the secured creditor, may withhold its vote and thus block, hence the name, a voluntary bankruptcy petition. Further, given the limited operations, an involuntary petition against the entity is highly unlikely.

c. Fiduciary duties and public policy concerns

Why go to such effort, one might ask? For one crucial reason: a simpler, absolute prohibition against filing for bankruptcy will likely be deemed void as against public policy. As corporate entities have been held to have, in certain instances, rights akin to that of natural person, *see, e.g.*, *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 342 (2010), prohibiting such entities from availing themselves of the bankruptcy laws – laws so seminally important that they were specifically authorized under the Constitution – is generally considered bad form. *Gen. Growth*, 409 B.R. at 49. In the same way that individuals may not contract away their bankruptcy rights, corporations should be similarly constrained. *See, e.g.*, 11 U.S.C. 362(e); *Klingman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir. 1987) ("For public policy reasons, a debtor may not contract away the right to a discharge in bankruptcy."); *In re Shady Grove Tech Ctr. Assocs. Ltd. P'ship*, 216 B.R. 386, 390 (Bankr. D. Md. 1998), *supplemented*, 227 B.R. 422 (Bankr. D. Md. 1998) (corporate contractual "prohibitions against the filing of a bankruptcy case are unenforceable").

Bankruptcy law, however, is equally clear that corporate formalities and state corporate law must also be satisfied in commencing a bankruptcy case. *NNN 123 N. Wacker*, 510 B.R. at 858. Except in very specific circumstances not at play here,[8] an improperly authorized corporate bankruptcy filing is infirm. *Id.* (*citing Price v. Gurney*, 324 U.S. 100, 106 (1945)).

Put another way, the long-standing policy against contracting away bankruptcy benefits is not necessarily controlling when what defeats the rights in question is a corporate control document instead of a contract.[9] *See Klingman*, 831 F.2d at 1296; *see also 203 N. LaSalle St. P'ship*, 246 B.R. at

---

8 *See, e.g.*, *In re American Globus Corp.*, 195 B.R. 263 (Bankr. S.D.N.Y. 1996) (case would not be dismissed despite failure to satisfy 100% shareholder authorization vote requirement, when dissenting shareholder was motivated by improper means to avoid bankruptcy); *see also Management Techs., Inc. v. Morris*, 961 F.Supp. 640 (S.D.N.Y. 1997) (bankruptcy filed through improper corporate action would not be dismissed).

9 To be clear, it is not just contractual prohibitions that have been found to be void. *See, e.g.*, *In re Auto. Professionals, Inc.*, 370 B.R. 161, 181 (Bankr. N.D. Ill. 2007) (Doyle, J.) ("State law can suspend the operation of Title 11 only when a debtor is not eligible for relief under § 109 of the Bankruptcy Code."); *In re Corp. &*

331 (As "bankruptcy is designed to produce a system of reorganization and distribution different from what would obtain under nonbankruptcy law, it would defeat the purpose of the Code to allow parties to provide by contract that the provisions of the Code should not apply.").

Nonetheless, common wisdom dictates that the corporate control documents should not include an absolute prohibition against bankruptcy filing.[10] Even though the blocking director structure described above impairs or in operation denies a bankruptcy right, it adheres to that wisdom. It has built into it a saving grace: the blocking director must always adhere to his or her general fiduciary duties to the debtor in fulfilling the role. That means that, at least theoretically, there will be situations where the blocking director will vote in favor of a bankruptcy filing, even if in so doing he or she acts contrary to purpose of the secured creditor for whom he or she serves.

As noted by Judge Gropper in *General Growth*, "if Movants believed that an 'independent' manager can serve on a board solely for the purpose of voting 'no' to a bankruptcy filing because of the desires of a secured creditor, they were mistaken." 409 B.R. at 64. In *Kingston Square*, Judge Brozman was also clearly incredulous at the attempt by the parties to forswear applicable fiduciary duties so as to block an otherwise necessary bankruptcy filing. *In re Kingston Square Assocs.*, 214 B.R. 713, 735-36 (Bankr. S.D.N.Y. 1997) ("Richardson [the blocking director] says he was unaware in his capacity as director of his fiduciary duties to creditors and that he only learned of his duties to creditors later. … Basic hornbook law provides that directors occupy a fiduciary relation to the corporation and its shareholders … Richardson is an attorney who worked on sophisticated corporate financings. It is inconceivable that he would not understand that the corporate general partners of which he was a director bore fiduciary obligations to the limited partners. (That is the stuff of a basic corporate law course in law school.) Yet he completely ignored the limited partners' plight in the face of foreclosure actions instituted by the group which placed him on the boards of directors of these and other companies and saw to it that he was paid fees."). Courts have clearly gone out of their way to enforce the basic public policy prohibition in such circumstance. *See Gen. Growth*, 409 B.R. at 64; *Kingston Square*, 214 B.R. at 736; *In re Spanish Cay Co., Ltd.*, 161 B.R. 715, 723 (Bankr. S.D. Fla. 1993) (permitting insiders to also be involuntary petitioning creditors despite corporate control documents arguably prohibiting same).

The consideration of fiduciary duties and public policy concerns further extends to situations where the blocking position is a member of a limited liability company because the member of a limited liability company, such as the Debtor in this case, maintains the power to consent or block a bankruptcy petition. *NNN 123 N. Wacker*, 510 B.R. at 858 (*citing In re Avalon Hotel Partners, LLC*, 302 B.R. 377 (Bankr. D. Oregon 2003)).

---

*Leisure Event Prods., Inc.*, 351 B.R. 724, 727 (Bankr. D. Ariz. 2006) (state receivership law and state court order enjoining bankruptcy filing invalid prior restraint on filing for bankruptcy by corporate entity).

10 Bankruptcy courts are loathe to enforce any waiver of rights granted under the Bankruptcy Code because such a waiver "violates public policy in that it purports to bind the debtor-in-possession to a course of action without regard to the impact on the bankruptcy estate, other parties with a legitimate interest in the process or the debtor-in-possession's fiduciary duty to the estate." *In re Trans World Airlines, Inc.*, 261 B.R. 103, 114 (Bankr. D. Del. 2001); *In re Tru Block Concrete Products, Inc.*, 27 B.R. 486, 492 (Bankr. S.D. Cal. 1983).

The essential playbook for a successful blocking director structure is this: the director must be subject to normal director fiduciary duties and therefore in some circumstances vote in favor of a bankruptcy filing, even if it is not in the best interests of the creditor that they were chosen by.

BCL's playbook was, unfortunately, missing this page.

d. BCL as the special member and its fiduciary duties thereunder

As previously stated, the Third Amendment establishes BCL as the "Special Member" of the Debtor. Third Amendment, Articles 12.2(vii), 12.3(i), p.2. BCL's role as the Special Member may enable it, therefore, to "block" the Debtor from taking any material action, including availing itself of bankruptcy relief, by withholding its required consent. *See id.* at Article 12.2(vi), p.2. This structure undoubtedly was negotiated by BCL to ensure that the Property was not to be administered in a bankruptcy.

The Debtor's bankruptcy petition was, nonetheless, consented to by the remaining members of the Debtor. The Debtor argues that the consent of the remaining members was sufficient because, despite BCL's insistence to the opposite, the blocking member provision in the Third Amendment is void. As noted above, from a bankruptcy perspective, that conclusion would not be inevitable if fiduciary duties are respected. That is not the case here, however.

The Third Amendment limits BCL duties as the Special Member to those "rights and duties expressly set forth in this Agreement." Third Amendment, Article 12.2(viii), p. 2. Those rights and duties are then limited by Article 12.4(iv):

> Notwithstanding anything provided in the Agreement (or other provision of law or equity) to the contrary, in exercising its rights under this Section, the Special Member shall be entitled to consider *only* such interests and factors as it desires, including its own interests, and shall to the fullest extent permitted by applicable law, have no duty or obligation to give any consideration to any interests of or factors affecting the Company or the Members.

*Id.* at Article 12.4(iv), p. 2-3 (emphasis added). This language results in BCL as the Special Member having no duties to the Debtor,[11] despite otherwise being a member of the Debtor.

Under Michigan law, members of a limited liability company have a duty to consider the interests of the entity and not only their own interests. The Michigan Limited Liability Company Act, a subsection of the Michigan Business Corporate Act, much like the corporate governance laws of many other states, requires that

[11] While the duty of an officer or director to consider interests does not extend to the creditors of a corporation in normal circumstances, most states impose an additional fiduciary duty to consider the interests of all creditors when a corporate debtor is operating in insolvency. *DeWitt v. Sealtex Co.*, Case No. 273387, 2008 WL 2312668, at *10 (Mich. Ct. App. June 5, 2008) (*citing* 3A Fletcher Cyclopedia Corporations, § 1035.60, p 30). Michigan is one of the rare states that does not impose this additional duty. *Id.* As noted in *Gen. Growth*, however, the duty to the debtor itself and, ultimately the debtor's collective equity holders, is what is paramount. 409 B.R. at 64. For these purposes, Michigan law is no different that such a duty is owed and may not be forsworn.

> (1) A manager shall discharge the duties of manager in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner the manager reasonably believes to be in the best interests of the limited liability company.

Mich. Comp. Laws Ann. § 450.4404. Therefore, BCL, as a member of a Michigan limited liability company, the Debtor, must consider the interests of the Debtor.

The Third Amendment does provide, however, that these limited duties are allowed "to the fullest extent permitted by applicable law." Third Amendment at Article 12.4(iv), p. 2-3. That savings clause might cure the invalidity of the prohibition, but only by rendering it meaningless. The prohibition has no application other that which is impermissible under Michigan law.

By excluding the Debtor's interests from consideration by BCL when acting as the Special Member of the Debtor, thereby allowing BCL to consider only its own best interests, the Third Amendment also expressly eliminates the only redeeming factor that permits the blocking director/member construct. The Third Amendment provision that BCL's consent was required in order for the Debtor to petition for bankruptcy relief is, therefore, unenforceable, both as a matter of Michigan corporate governance and bankruptcy law.

What the court is left with is this – the blocking member provision of the Third Amendment is void. The remaining corporate governance provisions governing the Debtor, and analyzed in accordance with Michigan law, therefore, result in a valid consent to the Debtor's bankruptcy petition.

## CONCLUSION

For the foregoing reasons, BCL has failed to satisfy its burden of proof as to cause to dismiss the Debtor's bankruptcy petition. Accordingly, the Motion will be DENIED.

A separate Order will be issued concurrent with this Memorandum Decision.

Dated: April 5, 2016

Timothy A. Barnes
United States Bankruptcy Judge